UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIAN RAVEN,

        Plaintiff,

    v.

THE CITY OF ELMIRA, *et al.*,

        Defendants.

26-CV-6561-MAV
DECISION & ORDER

On May 20, 2026, pro se Plaintiff Julian Raven filed a complaint against the City of Elmira, New York, its City Council, its Mayor, and several City Council members. ECF No. 1. Plaintiff also filed a motion for a preliminary injunction and temporary restraining order. No. 2. After the Court found that Plaintiff's motion for injunctive relief was not accompanied by a motion for an expedited hearing as required by the Local Rules of Civil Procedure, Plaintiff filed a motion for an extension of time and a motion for expedited hearing. ECF No. 5.

Plaintiff's motion for an extension of time [ECF No. 5] is granted. However, for the reasons discussed below, his motion for preliminary injunctive relief [ECF No. 2] is denied.

## BACKGROUND

Plaintiff is a property owner in the city of Elmira, New York ("the City"), and a citizen of the United States. ECF No. 1 ¶ 16. Defendants include the City, the City Council, City Mayor Daniel Mandell, and City Council Members Corey Cooke, Joseph Duffy, Gary Brinn, Jackie Wilson, and Nanette Moss. *Id.* ¶¶ 17–20.

Historically, the City Council meetings included two public-comment portions: the first for agenda items, and the second to allow citizens to raise broader issues concerning matters affecting the City. *Id.* ¶¶ 21–23. In April 2026, however, the Defendants adopted a resolution abolishing the second public-comment portion of the City Council meetings. *Id.* ¶ 27. When Plaintiff went to the City Clerk's office on May 13 to ask to address the City Council concerning this new restriction, he was told that he could not participate because his subject matter was not on the meeting agenda. *Id.* ¶ 30. Further, when Plaintiff sought to speak at a City Council meeting on May 18, he was prohibited from speaking because his comments did not concern approved agenda items. *Id.* ¶¶ 31–32.

Plaintiff alleges that Defendants have made several statements to the press regarding the abolition of the second public comment portion of the meetings. *Id.* ¶ 36. Mayor Dan Mandell stated that "we thought as a council that there had been some liability with the second public comment portion of the meeting. So, we decided just to basically get rid of it." *Id.* ¶ 37. In addition, Councilman Joe Duffy stated that "People shouldn't have to listen to what [the speakers during the second public-comment period] were saying . . . the language was terrible, very offensive to other people in the room, and it just turned into personal attacks." *Id.* ¶ 38.

Plaintiff interprets these statements to signify that Defendants abolished the second public-comment period "because protected criticism occurring within that forum became objectionable to public officials." *Id.* ¶ 41. Plaintiff therefore alleges that the abolition of the second public-comment forum is a violation of the First and Fourteenth Amendments and asks this Court to declare Defendants' actions with respect to the

2

second public-comment period to be unconstitutional and grant permanent injunctive relief restoring that period to City Council meetings. *Id.*

As relevant to the instant order, Plaintiff also seeks preliminary injunctive relief while this action is pending. ECF No. 2.

## LEGAL STANDARD

"'[A] temporary restraining order . . . serves a purpose different from that of a preliminary injunction,' in that '[t]he purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.'" *Martin v. Warren*, 482 F. Supp. 3d 51, 67 (W.D.N.Y. 2020) (quoting *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009)). Nevertheless, the criteria for granting a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) ("Rule 65(b)") or a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) ("Rule 65(a)") are the same. *Kramer v. Pawlak*, No. 12-CV-813A(F), 2012 WL 4473256, at *3 (W.D.N.Y. Sept. 26, 2012), *report and recommendation adopted*, No. 12-CV-813A, 2012 WL 5943341 (W.D.N.Y. Nov. 27, 2012).

When the subject of the challenge is governmental action taken in the public interest under a statute or regulation, the party seeking preliminary injunctive relief must demonstrate:

> [T]hat they have suffered irreparable harm, that they have a . . . likelihood of success on the merits, that the balance of equities tips in their favor, and that an injunction is in the public interest. Plaintiffs must show a likelihood of success on the merits—as opposed to the lesser showing of "sufficiently serious questions going to the merits to make them fair ground for litigation"—because they are challenging governmental action taken in the public interest under a statute. *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (explaining that "governmental policies implemented through legislation or

3

regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly").

. . . .

The final two factors—the balance of the equities and the public interest— merge when, as in this case, the Government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

*Martin*, 482 F. Supp. 3d at 68 (footnotes omitted).

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, which are never awarded as of right, or as a routine matter." *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 483–84 (W.D.N.Y. 2018) (internal quotation marks and citations omitted). Thus, the Supreme Court has stated they "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## DISCUSSION

When a plaintiff is proceeding pro se, his submissions must be "liberally construed" to present the strongest arguments they suggest, particularly when he alleges civil rights violations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d. Cir. 2004). Further, as Plaintiff points out, the Supreme Court has made clear that "[t]he deprivation of First Amendment freedoms, even briefly, constitutes irreparable injury as a matter of law." ECF No. 2 at 11 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Nevertheless, even liberally construing Plaintiff's arguments for preliminary injunctive relief in the present case, the Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits on his

claim that his First Amendment rights were violated.

In *Cornelius v. NAACP Legal Defense & Educational Fund*, the Supreme Court articulated a three-step inquiry to guide courts in their determination as to whether a state actor violated a plaintiff's First Amendment free speech rights. *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 200 (D. Conn. 2005) (discussing *Cornelius*, 473 U.S. 788, 797 (1985)). Courts must assess (1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard. "The appropriate level of judicial scrutiny depends on the nature of the forum subject to the regulation." *Endemann v. City of Oneida, New York*, No. 519CV1444MADATB, 2020 WL 1674255, at *4 (N.D.N.Y. Apr. 6, 2020).

Courts in this Circuit analyze municipal council or board meetings as limited public fora. *See, e.g., Weinberg v. Vill. of Clayton, New York*, 537 F. Supp. 3d 344, 364 (N.D.N.Y. 2021) (village board meeting); *Anello v. City of Niagara Falls*, No. 09-CV-715S, 2012 WL 2847615, at *3 (W.D.N.Y. July 11, 2012) (city council meeting); *Devine v. Village of Port Jefferson*, 849 F. Supp. 185, 189 (E.D.N.Y. 1994) (village council meeting). "The necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). Thus, "in a limited public forum, government is free to impose a blanket exclusion on certain types of speech . . . ." *Hotel Emps. & Rest. Emps. Union, Loc. 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 545–46 (2d Cir. 2002) ("*Hotel Emps.*") (internal quotation

marks and citation omitted).

Once it allows expressive activities of a certain type, however, it may not selectively deny access for other activities of that type. *Hotel Emps.*, 311 F.3d at 546. That is, "the government may not, even in a limited forum, 'regulat[e] speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Anello*, 2012 WL 2847615 at *3 (quoting *Rosenberger*, 515 U.S. at 829). On the other hand, "[a]s to expressive uses not falling within the limited category for which the forum has been opened, restrictions need only be viewpoint neutral and reasonable." *Hotel Emps.*, 311 F.3d at 546 (citations omitted). A rule is viewpoint neutral if it is "based only upon the manner in which speakers transmit their messages to viewers, and not upon the messages they carry." *Turner Broadcasting Systems. Inc. v. F.C.C.*, 512 U.S. 622, 645 (1994).

Here, nothing required the City Council to maintain the second public-comment period for general comment. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983) ("a state is not required to indefinitely retain the open character of the facility"). Following the City Council's April 2026 legislation, it appears that the limited category for which the City Council meetings were open was for the first public-comment period on the Council's agenda for that particular meeting. Plaintiff does not allege that Defendants discriminated against any particular viewpoint(s) as to the first public-comment period on the agenda.

Further, elimination of the second public-comment period was viewpoint neutral. Although Plaintiff suggests that the purpose for eliminating the period was to squash criticism of the City and its government, the rationales that Plaintiff cites from the

6

Mayor and Councilman Duffy do not support that inference, and elimination of all comment did not selectively silence any particular view or message but rather barred all general comments regardless of view. *See Weinberg*, 537 F. Supp. 3d at 364 (finding rules prohibiting public comment on particular issues were viewpoint neutral because the comment bar applied to all views on the issues, not just a particular view).

In short, Plaintiff has failed to demonstrate a likelihood of success on his First Amendment claims, and therefore is not entitled to preliminary injunctive relief.

## CONCLUSION

Consistent with the foregoing discussion, Plaintiff's motion for an extension [ECF No. 5] is GRANTED, but his motion for preliminary injunctive relief [ECF No. 2] is DENIED. Plaintiff's motion for an expedited hearing (ECF No. 5) on his motion for preliminary injunctive relief is moot.

SO ORDERED.

Dated:     June _22_, 2026
           Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

7